1  **WEILAND, GOLDEN,**
   **SMILEY, WANG EKVALL & STROK, LLP**
2  Evan D. Smiley, State Bar No. 161812
   Reem J. Bello, State Bar No. 198840
3  Kyra E. Andrassy, State Bar No. 207959
   650 Town Center Drive, Suite 950
4  Costa Mesa, CA 92626
   Telephone: 714-966-1000
5  Facsimile: 714-966-1002

6  Proposed Insolvency Counsel for RSM BFS
   Partners, a California limited partnership,
7  Debtor and Debtor-in-Possession

8                **UNITED STATES BANKRUPTCY COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10                      **SANTA ANA DIVISION**

| | |
|---|---|
| In re | Case No. 8:08-bk-17771 TA |
| RSM BFS PARTNERS, a California limited partnership, | Chapter 11 Case |
| | (Jointly Administered with Case Nos. 8:08-bk-17773 TA, 8:08-bk-17774 TA and 8:08-bk-17777 TA) |
| Debtor and Debtor-in-Possession. | |
| ____ Affects BRECKENRIDGE FOOD SYSTEMS, INC. Only | **DEBTORS' EMERGENCY MOTION FOR ORDER:** |
| ____ Affects RIVER KING, L.P. Only | **(1) AUTHORIZING THE DEBTORS TO MAINTAIN PRE-PETITION MERCHANT SERVICES ACCOUNTS; AND** |
| ____ Affects RIVER KING, LLC Only | |
| ____ Affects RSM BFS PARTNERS Only | **(2) COMPELLING BANKS TO CONTINUE MERCHANT SERVICES; AND** |
| _X_ Affects All Debtors. | |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | [Declaration of John D. Gantes Filed Concurrently Herewith] |

25  **TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY**

26  **JUDGE, AND PARTIES-IN-INTEREST:**

27        RSM BFS Partners, a California limited partnership ("RSM"), Breckenridge Food

28  Systems, Inc., a California corporation ("Breckenridge"), River King, L.P., a California

                                        1                    EMERGENCY MOTION RE
                                                             MERCHANT SERVICES
274977.1

limited partnership ("River King, L.P.") and River King, LLC, a California limited liability company ("River King, LLC"), the jointly administered debtors and debtors-in-possession in the above Chapter 11 proceedings (collectively, the "Debtors"), hereby move the Court on a emergency basis, for an order:

    1.    Authorizing Debtors to maintain their pre-petition merchant services accounts;

    2.    Compelling Chase Merchant Services, American Express and Discover Financial Services, Inc. to continue providing merchant services to Debtors; and

    3.    Granting such other and further relief as the Court deems just and proper.

Concurrently with the filing of this Motion, Debtors will serve, via overnight mail, a copy of this Motion on the twenty (20) largest unsecured creditors, all purported secured creditors, the Office of the United States Trustee and the parties affected by the Motion. Upon this Court's scheduling a hearing on this Motion, Debtors will serve, via facsimile transmission, notice of the date and time of the hearing on this Motion.

This Motion is made and based on the Memorandum of Points and Authorities attached hereto, the Declaration of John D. Gantes ("Gantes Declaration"), filed concurrently herewith, and on such other evidence, both oral and documentary, as the Court may consider prior to or at the hearing on this Motion.

WHEREFORE, Debtors pray that the Court enter an order granting the relief requested above, and such additional relief as the Court deems just and proper.

Dated: November 25, 2008

WEILAND, GOLDEN,
SMILEY, WANG EKVALL & STROK, LLP

By: _____
REEM J. BELLO
Proposed Insolvency Counsel for
RSM BFS Partners, a California
limited partnership, Debtor and
Debtor-in-Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. THE NEED FOR EMERGENCY RELIEF

Currently, Debtors are affiliated with approximately 50 entities owning and operating approximately 110 restaurants throughout California, Washington and Oregon and 60 entities owning and operating various real properties from which many of the restaurants lease space. Approximately thirteen of these affiliated cases have already been filed with the Court.

It is vital that Debtors are able to make credit cards available for their customers to use to purchase food and beverages and to continue to generate and collect on their revenue stream by continuing to charge their customers' credit cards, as authorized, without interruption. Should Debtors be unable to continue accepting credit card payments, their revenues are likely to decrease substantially. Debtors critically need the relief requested herein.

Procedural authorization for an emergency hearing on the Motion is found in Rule 9006 of the Federal Rules of Bankruptcy Procedure and in Local Bankruptcy Rule 9075. Debtors respectfully submit that, on the facts of this case, emergency relief is both necessary and appropriate.

### II. FACTUAL BACKGROUND

#### A. Description of Debtors

Debtors operate Burger King franchises in California and together have approximately 14 locations. Specifically, they operate the following locations:

    a. Breckenridge Food Systems, Inc., operates locations in Irvine, Santa Ana, Aliso Viejo, Ladera Ranch, Orange, and two locations in Newport Beach.

    b. River King, L.P., operates six Burger Kings in the Inland Empire and River King, LLC, is its general partner; and

    c. RSM BFS Partners, a California limited partnership, operates a location in Rancho Santa Margarita.

### B. Events Precipitating Chapter 11 Filing

Debtors have experienced a decline in their revenues because of the current economic climate and have fallen behind on various debts, including royalty payments to Burger King Corporation, which has issued notices of default to various of the Debtors. To prevent termination of the franchise agreements, Debtors require some breathing room from pre-petition creditors while they reorganize, close unprofitable stores as necessary, and rebuild themselves into viable businesses through the reorganization process.

Debtors are behind on their rent payments on their real property leases. Debtors have also fallen behind on royalty payments to Burger King Corporation and have received notices of default. To prevent termination of the franchise agreements with Burger King Corporation while Debtors reorganize their restaurants and close unprofitable stores, as necessary, Debtors require relief under the Bankruptcy Code.

Together, the foregoing factors placed severe pressure on Debtors' cash flow, and deprived Debtors of the ability to timely pay vendor obligations, also resulting in defaults in Debtors' obligations to vendors.

### C. The Merchant Services Agreements

Debtors are parties to merchant services agreements (collectively, "Bank Agreements") with Chase Merchant Services ("Chase"), American Express and Discover Financial Services, Inc. ("Discover"). Pursuant to these agreements, Debtors are able to accept American Express, Master Card, Visa and Discover credit cards from their customers. In consideration for the processing of credit card transactions, Debtors pay a fee for each credit card transaction.

### D. The Need for Continued Use of Merchant Services

The credit card merchant services provided by Chase, American Express, and Discover (collectively sometimes hereinafter referred to as the "Banks") are absolutely crucial to Debtors' business. In the event that Debtors could no longer accept credit cards and offer the convenience that goes with credit cards, Debtors believe that they may lose business and sales from many customers, as most of Debtors' customers pay with credit

cards. In addition, to the extent Debtors accepted checks, they could be faced with collection issues that naturally arise from accepting checks. Furthermore, Debtors may not be able to find merchant services from alternative sources.

For all of these reasons, it is vital to Debtors' ongoing business, and the viability of a successful reorganization, that Debtors be able to continue operating under Bank Agreements. Accordingly, Debtors must maintain these particular merchant accounts.

The Banks are at no risk of loss by continuing such services, as they have access to sufficient funds to cover any chargebacks and fees that may accrue. Based on the foregoing, Debtors request that the court compel the Banks to continue providing merchant services to Debtors and authorize Debtors to maintain the merchant service accounts.

## III. DEBTORS MAY CONTINUE THEIR USE OF MERCHANT SERVICES AND RELATED ACCOUNTS

Section 363 of the Bankruptcy Code provides that only transactions outside the ordinary course of business require court approval, while transactions within the ordinary course of business may be entered into by Debtors without notice or court approval.

(b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

(c)(1)... the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363.

### A. Merchant Services Are Within the Ordinary Course and Do Not Require Court Approval

If the proposed transactions are viewed to be in the ordinary course, the Debtors may freely enter into the post-petition transactions without Court approval. Although the Bankruptcy Code does not define the term "ordinary course of business," the Ninth Circuit

has determined that a transaction which meets both the "horizontal" and "vertical" dimension test is a transaction which constitutes the "ordinary course of business." In re Dant & Russell, 853 F.2d 700, 703-06 (9th Cir. 1988). The "horizontal dimension" test applies an industry-wide perspective and involves a comparison of this debtor's business to other like businesses and a determination whether the transaction is of a type that other similar businesses would engage in as "ordinary business." Id. at 704. The "vertical dimension" test examines the transaction from the viewpoint of a hypothetical creditor and focuses on the creditor's "reasonable expectations" and what transactions the debtor is likely to enter into in the course of its business. Id. at 705. In utilizing the vertical dimension test, a Court must look to the nature of the debtor's pre-petition business as compared to its post-petition business. Id.

In this case, Debtors, which own and operate restaurants, are seeking authority to use merchant services and retain the related accounts. Debtors believe that engaging in these services is ordinary for restaurants, in general, particularly those of the size and type of Debtors' restaurants. Moreover, Debtors believe that it is reasonable for creditors to offer credit cards and thus operate pursuant to such agreements given the nature of Debtors' business.

### B. Transactions Outside the Ordinary Course

If the transactions are not within the "ordinary course of business," the post-petition transaction may be approved as within the reasonable business judgment of the debtor. The debtor has the authority to operate his business under 11 U.S.C. §§ 1107 and 1108. "[A] Chapter 11 debtor should be given every opportunity afforded it under the bankruptcy laws to take advantage of the 'optimum environment for rehabilitation' without unnecessary interruption of its business." In re Air Vectors Associates, 53 B.R. 668, 686-687 (Bankr. S.D. N.Y. 1985) (citing B. Weintraub & A. Resnick, Bankruptcy Law Manual ¶ 8.11[1] at 8-23 (1980)). "So long as a trustee conducts the affairs of the estate by exercising his business judgment in good faith, upon a reasonable basis, and within the scope of his authority under the Code, he may proceed without interference." In re

1 Consolidated Auto Recyclers, Inc., 123 B.R. 130, 140 (Bankr.D.Me. 1991); Bennett v. Williams, 892 F.2d 822, 824 (9th Cir. 1989) (deference to business management decisions of bankruptcy trustee). Similar to decisions to assume or reject, in examining business transactions, the Court employs a deferential "business judgment" rule. "A debtor-in-possession is accorded great deference as to its business judgments." Id.

In this case, Debtors seek to continue to offer their customers the ability to use credit cards, which requires Debtors to continue to use merchant services and retain the related accounts. As a result, Debtors have determined, in their business judgment, to continue the merchant services. Based on the foregoing, Debtors believe that, if the proposed transaction is viewed to be outside the ordinary course, then it is a reasonable exercise of Debtors' business judgment, and thus, should be approved.

## IV. THE BANKS MUST CONTINUE PROVIDING MERCHANT SERVICES TO DEBTORS BECAUSE THE AUTOMATIC STAY PRECLUDES THE BANKS FROM UNILATERALLY TERMINATING THEIR AGREEMENTS WITH DEBTORS

### A. Bank Agreements Are Property of the Estate, and Thus Subject to the Automatic Stay

Section 362 of the Bankruptcy Code stays all entities from taking any act to obtain possession of property of the estate or of property of the estate or to exercise control over property of the estate. Property of the estate is comprised of all legal and equitable interests of a debtor in property as of the commencement of the case (11 U.S.C. § 541(a)(1), which includes contracts. See, In re Vylene Enterprises, Inc., 1472 (CA. 9 1996).

As property of the estate, all contracts are automatically stayed from termination, even if they could be terminated as "financial accommodations" contracts under section 365(e). As a result, a non-debtor must seek relief from the automatic stay before unilaterally terminating any executory contract with a debtor. In re Computer Communications, Inc., 824 F.2d 725 (9th Cir. 1987); Edwards Mobile Home Sales, Inc. v. Ohio Casualty Ins. Co., 119 B.R. 857; see also In re Wegner Farms Co., 49 B.R. 440

5    EMERGENCY MOTION RE MERCHANT SERVICES

274977.1

(Bankr. N.D. Iowa 1985) (applying the automatic stay to section 365(c) and (e) contracts is wholly consistent with the purposes and policies of the Bankruptcy Code.)

In In re Computer, the Ninth Circuit held that the automatic stay applied even if the contract was terminable under section 365(e)(2). The Ninth Circuit began its analysis by looking at the legislative history of the automatic stay, noting that the purpose of the automatic stay is to give the Debtors a breathing spell from creditors, to stop all collection efforts, and to permit the Debtors to attempt repayment or reorganization. Id. at 729 (citing S.Rep. No. 989, 95th Cong., 2d Sess. 54-55, reprinted in 1978 U.S. Code Cong. & Admin.News 5787, 5840-41). The court then looked to the statutory definition and legislative history of property of the estate. Property of the estate "includes all legal or equitable interests of the Debtors in property as of the commencement of the case" (11 U.S.C. § 541), which "includes all kinds of property, including tangible or intangible property" (H.R.Rep. No. 595 at 367, reprinted in 1978 U.S. Code Cong. & Admin.News at 6323). Id.

In ultimately reaching its conclusion, the Ninth Circuit agreed with and adopted the analysis of the bankruptcy court in In re Wegner Farms Co., 49 B.R. 440 (Bankr. N.D. Iowa 1985), which held that, even if a contract cannot be assumed by the Debtors, which is clearly not the case here, it must be terminated pursuant to the terms of the automatic stay provision.

In its analysis, the Court pointed out that although Congress deemed it necessary to exempt certain actions from the automatic stay, no such exception was provided for in section 362(b). The court then pointed out that while Congress overrode the provisions of the automatic stay when it felt it necessary (e.g., see 11 U.S.C. § 1110), no such override provision was created for executory contracts, even if they were not assumable.

The Court went on to point out that legislative history emphasizes that the stay is intended to be broad in scope. Congress designed it to protect Debtors and creditors from piecemeal dismemberment of the Debtors' estate. The automatic stay statute itself provides a summary procedure for obtaining relief from the stay. All parties benefit from

the fair and orderly process contemplated by the automatic stay and judicial relief procedure. Judicial toleration of an alternative procedure of self-help and post hoc justification would defeat the purpose of the automatic stay. Accordingly, the court affirmed the bankruptcy and district courts on the ground that unilaterally terminating the contract violated the automatic stay. In doing so, the court concluded that Congress did not intend to except executory contracts from the reach of the automatic stay.

Based on the foregoing, the Bank Agreements are property of the estate and subject to the Automatic Stay.

### B. Enforcing the Stay Is Core to Maintaining the Policy Goals of the Bankruptcy Code

The automatic stay's prevention of a unilateral termination of a merchant agreement promotes the goal of Debtors' rehabilitation, while imposing only a minimal burden on non-Debtors. The automatic stay provides Debtors with a breathing spell as well as an opportunity to restructure its business. See Independent Union of Flight Attendants v. Pan Am. World Airways, Inc., 966 F.2d 457, 459 (9th Cir. 1992); Borman v. Raymark Indus., 946 F.2d 1031, 1033 (3rd Cir. 1991); Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 989 (2d Cir. 1990), cert. denied, 112 S.Ct. 50 (1991); H.R. Rep No 595, supra note 3, at 340, reprinted in 1978 U.S.C.C.A.N. at 6297; S. Rep. No. 989, supra note 16, at 54-55, reprinted in 1978 U.S.C.C.A.N. at 5840-41. The imposition of the automatic merely imposes an additional step upon the Bank; that is, to come before this court seeking relief from the stay, which can prevent an otherwise potentially erroneous termination by virtue of a non-Debtors' unilateral poor judgment. The stay does not permanently prevent the non-Debtors from terminating an executory contract. See H.R. Rep. No. 595, supra note 3, at 341, reprinted in 1978 U.S.C.C.A.N. at 6297; S. Rep. No. 989, supra note 16, at 50, reprinted in 1978 U.S.C.C.A.N. at 5836. Rather, the stay only requires that the Banks come before this court, after adequate notice and hearing, to seek relief from the stay, or otherwise provide that the stay does not apply.

Banks' failure to adhere to the automatic stay, on the other hand, could cause far greater damage to Debtors. If Banks take the position that the stay does not apply to them and refuse to honor their agreements, Debtors may lose many of its customers and business from those who may otherwise spend more by virtue of paying with credit cards as opposed to cash, thereby causing losses in revenues, profits and overall enterprise value as a result of the foregoing declines.

Based on the foregoing, pursuant to Section 362, Banks are required to comply with the Bank Agreements and cannot unilaterally terminate the agreements. Therefore, Debtors request that the Court compel compliance with these agreements.

## V. RELIEF IS JUSTIFIED ON AN EMERGENCY BASIS

Rule 9006(c)(1) of the Federal Rules of Bankruptcy Procedure provides that, for "cause shown," a bankruptcy court may reduce the time periods provided for service in the Bankruptcy Rules, except as to the time periods provided in Rule 9006(c)(2). Since the time period at issue in this Motion is not one of those listed in Rule 9006(c)(2), this Court has the power to grant the relief prayed for herein on an "emergency" basis.

In this case, Debtors, operators of restaurants, must be able to offer their customers the ability to use credit cards. Without this access, Debtors are likely to lose substantial revenues and goodwill from their customers. Accordingly, Debtors request that this Court immediately schedule an emergency hearing on this Motion.

## VI. CONCLUSION

Based upon the foregoing, the Debtors respectfully submit that this Court should enter an order:

1.  Authorizing Debtors to maintain their pre-petition merchant services accounts;

2.  Compelling American Express, Chase Merchant Services, and Discover Financial Services, Inc. to continue providing merchant services to Debtors; and

EMERGENCY MOTION RE
MERCHANT SERVICES

274977.1

1      3.     Granting such other and further relief as the Court deems just and proper.

2 Dated: November __, 2008      WEILAND, GOLDEN,
SMILEY, WANG EKVALL & STROK, LLP

By: _____
REEM J. BELLO
Proposed Insolvency Counsel for
RSM BFS Partners, a California
limited partnership, Debtor and
Debtor-in-Possession