

1 | **WEILAND, GOLDEN,**
**SMILEY, WANG EKVALL & STROK, LLP**
2 | Evan D. Smiley, State Bar No. 161812
Reem J. Bello, State Bar No. 198840
3 | Kyra E. Andrassy, State Bar No. 207959
650 Town Center Drive, Suite 950
4 | Costa Mesa, CA 92626
Telephone: 714-966-1000
5 | Facsimile: 714-966-1002

6 | Proposed Insolvency Counsel for RSM BFS
Partners, a California limited partnership,
7 | Debtor and Debtor-in-Possession

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **SANTA ANA DIVISION**

11 | In re ) Case No. 8:08-bk-17771-TA

12 | RSM BFS Partners, a California limited ) Chapter 11 Case
partnership,
13 |                    Debtor and ) (Jointly Administered with Case Nos.
                   Debtor-in-Possession. ) 8:08-bk-17773 TA, 8:08-bk-17774 TA
14 | _____ ) and 8:08-bk-17777 TA)

15 | _____ Affects BRECKENRIDGE FOOD ) **DEBTORS' EMERGENCY MOTION**
SYSTEMS, INC. Only ) **FOR ORDER AUTHORIZING PAYMENT**
16 | ) **AND HONORING OF PREPETITION**
_____ Affects RIVER KING, L.P. Only ) **PAYROLL OBLIGATIONS;**
17 | ) **MEMORANDUM OF POINTS AND**
_____ Affects RIVER KING, LLC Only ) **AUTHORITIES IN SUPPORT THEREOF**
18 | )
_____ Affects RSM BFS PARTNERS Only ) [Declaration of John D. Gantes Filed
19 | ) Concurrently Herewith]
_X_ Affects All Debtors. )
20 | _____ )

21 | **TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY**

22 | **JUDGE, AND PARTIES-IN-INTEREST:**

23 |          RSM BFS Partners, a California limited partnership ("RSM"), Breckenridge Food

24 | Systems, Inc., a California corporation ("Breckenridge"), River King, L.P., a California

25 | limited partnership ("River King, L.P.") and River King, LLC, a California limited liability

26 | company ("River King, LLC"), the jointly administered debtors and debtors-in-possession

27 | in the above Chapter 11 proceedings (collectively, the "Debtors"), hereby move the Court

28 | on an emergency basis, for an order granting the following relief:

1

EMERGENCY MOTION FOR ORDER
AUTHORIZING PAYMENT

274976.1

1    A.   Authorizing payment of prepetition employee wage and salary obligations owed

2  by Debtors up to the priority limit in Section 507(a) of the United States Bankruptcy Code;

3    B.   Authorizing Debtors to pay:  1) the reimbursement of ordinary course prepetition

4  employment business expenses in accordance with company policy, and 2) the payment

5  of benefit obligations including 401(k) plan employer contributions, worker's

6  compensation, medical, dental, life insurance, disability insurance, and miscellaneous

7  other benefits incurred and payable in the ordinary course;

8    C.   Authorizing Debtors to honor all prepetition vacation pay, sick leave, holiday

9  pay, jury duty pay, and other paid leave claims in the ordinary course;

10    D.   Authorizing Debtors to retain its prepetition payroll account(s) for 30 days and

11  directing the bank or other financial institution not or otherwise impair Debtors' ability to

12  deposit funds into and to withdraw funds from said account(s);

13    E.   Authorizing Debtors to take all actions reasonable and necessary to comply with

14  its obligations to its existing payroll services such as ADP;

15    F.   The entry of an order (i) directing all banks to honor Debtors' prepetition checks

16  for payment of any of the foregoing, and (ii) prohibiting all banks from placing any holds

17  on, or attempting to reverse, any automatic transfers on account of the foregoing; and

18    G.   Such additional relief as the Court deems just and proper.

19    This motion is made on the basis of the Declaration of John D. Gantes ("Gantes

20  Declaration") filed concurrently herewith, the within points and authorities, and on such

21  other evidence as the Court elects to consider prior to or at the hearing on this matter.

22  Dated: November 25, 2008          WEILAND, GOLDEN,
                                    SMILEY, WANG EKVALL & STROK, LLP
23

24                                  By: _____

25                                  REEM J. BELLO
                                    Proposed Insolvency Counsel for
26                                  RSM BFS Partners, a California limited
                                    partnership, Debtor and
27                                  Debtor-in-Possession

28

EMERGENCY MOTION FOR ORDER
                                    AUTHORIZING PAYMENT

274976.1

I.    **THE NEED FOR EMERGENCY RELIEF**

Debtors are affiliated with approximately 50 entities owning and operating approximately 110 restaurants throughout California, Washington, and Oregon, and 60 entities owning and operating various real properties from which many of the restaurants lease space. Attached as Exhibit "1" to the Gantes Declaration are corporate organization charts that illustrate graphically the ownership relationship of Debtors.

In order to preserve and maintain their ongoing business operations, and to meet the needs of their customers, Debtors must retain the support of their employees. To retain this support, Debtors must timely pay all prepetition payroll and wage related obligations owed to this constituency.

The next payroll is due and payable on November 26, 2008 for employee services rendered for the period November 1, 2008 through November 15, 2008, and thus represents pre-petition claims. To meet this obligation, payroll needs to be funded as soon as possible. There is another payroll due and payable on December 10, 2008 for the period November 16, 2008 to November 30, 2008, which includes pre-petition employee services from November 16, 2008 to November 24, 2008, and this Motion also seeks authority to pay this amount as well.

As a result, the need for judicial relief is immediate. Debtors believe that employees will leave if they are not paid, which will cause immediate and irreparable damage to Debtors' business. In contrast, if Debtors can promptly obtain the relief sought herein, their business value will be preserved for the benefit of all creditors.

II.    **STATEMENT OF FACTS**

A.    **Description of Debtors**

Debtors are affiliated with approximately 50 entities owning and operating approximately 110 restaurants throughout California, Washington, and Oregon, and 60 entities owning and operating various real properties from which many of the restaurants lease space. Approximately thirteen of these affiliated cases have already been filed with the Court.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

1

274976.1

1  Debtors operate Burger King franchises in California and together have

2  approximately 14 locations.  Specifically, they operate the following locations:

3         a.    Breckenridge Food Systems, Inc., operates locations in Irvine,

4                Santa Ana, Aliso Viejo, Ladera Ranch, Orange, and two locations in

5                Newport Beach.

6         b.    River King, L.P., operates six Burger Kings in the Inland Empire and

7                River King, LLC, is its general partner; and

8         c.    RSM BFS Partners, a California limited partnership, operates a

9                location in Rancho Santa Margarita.

10  Attached as Exhibit "1" to the Gantes Declaration are corporate organization charts

11  that illustrate graphically the ownership relationship of Debtors.

12  **B.    Events Precipitating Chapter 11 Filing**

13  Debtors have experienced a decline in their revenues because of the current

14  economic climate and have fallen behind on various debts, including royalty payments to

15  Burger King Corporation, which has issued notices of default to various of the Debtors.

16  To prevent termination of the franchise agreements, Debtors require some breathing room

17  from pre-petition creditors while they reorganize, close unprofitable stores as necessary,

18  and rebuild themselves into viable businesses through the reorganization process.

19  Debtors are behind on their rent payments on their real property leases.  Debtors

20  have also fallen behind on royalty payments to Burger King Corporation and have

21  received notices of default.  To prevent termination of the franchise agreements with

22  Burger King Corporation while Debtors reorganize their restaurants and close unprofitable

23  stores, as necessary, Debtors require relief under the Bankruptcy Code.

24  Together, the foregoing factors placed severe pressure on Debtors' cash flow, and

25  deprived Debtors of the ability to timely pay vendor obligations, also resulting in defaults in

26  Debtors' obligations to vendors.

27

28

EMERGENCY MOTION FOR ORDER
AUTHORIZING PAYMENT

274976.1

## C.    The Relief Sought in this Motion

Debtors seek Court authority to pay their pre-petition wage related obligations and honor their employee related pre-petition benefits.  These obligations include prepetition payroll, wages, salaries, federal, state and local payroll taxes, deductions and withholdings, payroll deductions relating to various benefits, reimbursement of business expenses, 401(k) plan employer contributions; and miscellaneous other claims asserted by current employees (including, without limitation, worker's compensation, medical, dental, life insurance, and disability insurance) (collectively, the "Prepetition Compensation").  These benefits include vacation pay, sick leave, holiday pay, jury duty pay, and other paid leave ("Benefits").

The pre-petition wages component of the Prepetition Compensation that is payable on November 26, 2008 and December 10, 2008 will be approximately $265,000.  The payroll for the Employees is paid in arrears on a bi-monthly basis.  Payroll is due on November 26, 2008 for pre-petition wages for the period November 1, 2008 through November 15, 2008.  Payroll is due on December 10, 2008 for pre-petition wages for the period November 16, 2008 to November 24, 2008.  Attached to the Gantes Declaration as Exhibit "3" is a list of the Debtor's employees and the monthly payroll amount for each. Furthermore, the payroll checks paid pursuant to this motion will not exceed the $10,950 wage priority limit provided for in Section 507 of the Bankruptcy Code.

Debtor also seeks an order authorizing Debtors to retain its prepetition payroll account(s) for a period of 30 days and directing the bank or other financial institution not or otherwise impair Debtors ability to deposit funds into and to withdraw funds from said account(s), and authorizing Debtors to take all actions reasonable and necessary to comply with its obligations to its existing payroll service, ADP Total Source ("ADP"), and the entry of an order (i) directing all banks to honor Debtors' prepetition checks for payment of any of the foregoing, and (ii) prohibiting all banks from placing any holds on, or attempting to reverse, any automatic transfers on account of the foregoing.  Because the payroll accounts serve a very limited purpose, the Debtors desire to retain these accounts

EMERGENCY MOTION FOR ORDER
AUTHORIZING PAYMENT

274976.1

1  during the case for thirty (30) days after the Petition Date.  Because these are limited

2  purpose accounts, the retention of these accounts for this limited period of time will not

3  have any adverse impact upon the interests of creditors, since no pre-petition claims will

4  be paid from these accounts except to the extent authorized in this Motion, or otherwise,

5  by this Court.

6          **D.**    **The Critical Need for Immediate Relief**

7          Debtors' business is dependent upon its labor.  If these employees are not paid,

8  they will cease working and seek employment elsewhere.  Any such disruption would

9  have a devastating effect upon Debtors' business and consequential value to the

10  creditors.  In contrast, if Debtors obtain the relief sought herein, their business operation

11  will continue in the ordinary course, customer needs will be met, and the overall value of

12  Debtors' business enterprise will be preserved for creditors.

13  **III.**    **EMERGENCY RELIEF IS AUTHORIZED UNDER THESE CIRCUMSTANCES**

14          Procedural authorization for an emergency hearing on this emergency motion is

15  found in Rule 9006  of the Federal Rules of Bankruptcy Procedure, and in Local

16  Bankruptcy Rule 9075 1.  As discussed herein and as set forth in the supporting Gantes

17  Declaration filed concurrently herewith, Debtors respectfully submit that, on the facts of

18  this case, emergency relief is both necessary and appropriate.

19  **IV.**    **THE DEBTORS SHOULD BE AUTHORIZED TO PAY PRE-PETITION PAYROLL**

20          **A.**    **The Court May Authorize Payment of Pre-Petition Payroll and**

21                  **Honoring of Benefits**

22          Bankruptcy Code section 507(a)(4) gives priority status to allowed unsecured

23  claims for wages, salaries, or commissions, including vacation, severance, and sick leave

24  pay earned by an individual within 180 days of the Petition Date, up to $10,950 per

25  individual.  Specifically, section 507(a)(4) provides in pertinent part:

26          (a) The following expenses and claims have priority in the following order: . . .

27          (4) Third, allowed unsecured claims, but only to the extent of $10,950 for each

28  individual or corporation, as the case may be, earned within 180 days before the date of

1  the filing of the petition or the date of the cessation of the debtor's business, whichever

2  occurs first, for—

3      (A) wages, salaries, or commissions, including vacation, severance, and sick leave

4  pay earned by an individual;

5  11 U.S.C. § 507(a)(4).

6      Courts have consistently authorized the payment of pre-petition priority wages and

7  other debt in the absence of a plan of reorganization, where such payments create "the

8  greatest likelihood of payment of creditors in full or at least proportionately."

9      As stated by the Ninth Circuit in In re Adams Apple, Inc., 829 F.2d 1484 (9th Cir.

10  1987):

11      [A]nother "fundamental tenet"–rehabilitation of debtors, which may supersede the

12  policy of equal treatment. Cases have permitted unequal treatment of prepetition debts

13  when necessary for rehabilitation, in such contexts as (i) prepetition wages to key

14  employees; (ii) hospital malpractice premiums incurred prior to filing; (iii) debts to

15  providers of unique and irreplaceable supplies; and (iv) peripheral benefits under labor

16  contracts. See Ordin, Case Comment, In re Texlon Corporation, 596 F.2d 1092 (2d Cir.

17  [1979): Finality of Order of Bankruptcy Court, 54 Amer. Bankr. L.J. 173, 177 (1980).  ([I]t

18  illustrates a Congressional willingness to subordinate the interests of pre-petition creditors

19  to the goal of rehabilitation.)

20  Adams Apple, 829 F.2d at 1490.

21      Courts have also authorized Chapter 11 debtors to honor pre-petition employee

22  benefits.  See, Matter of Canton Casting, Inc., 103 B.R. 874 (Bankr. N.D. Ohio

23  1989) (authorizing payment of pre-petition vacation benefits); In re Busy Beaver Bldg.

24  Centers, Inc., 19 F.3d 833, 853 (3rd Cir. 1994) ("the bankruptcy court entered numerous

25  interim orders. . . authorizing. . . the payment of pre-petition wages and employee

26  benefits. . ."); In re Chateaugay Corp., 80 B.R. 279, 281 (S.D.N.Y. 1987) ("Judge Lifland,

27  upon application of LTV, issued an order authorizing and empowering LTV to continue

28

1  payment of pre-petition wages and salaries, employee reimbursement expenses, and

2  benefits.").

3      As set forth above, Section 507(a)(4) affords priority status to unsecured claims for

4  wages, salaries or commissions, including vacation, severance, and sick leave pay

5  earned by an individual within 180 days before the filing of a bankruptcy petition to the

6  extent of $10,950 for each such individual.  For a number of reasons, the Bankruptcy

7  Code affords special treatment to certain pre-petition claims of employees.  Wages are

8  priority claims, and thus must be paid in full in a reorganization case.  The ability to ensure

9  that the employees receive their unpaid pre-petition salary and do not miss a paycheck is

10  critical to obtaining the stability necessary for a successful reorganization, which benefits

11  all creditors.  Compared with a typical claim in bankruptcy, wages represent a large part of

12  an employee's wealth.  In addition, unlike an ordinary trade creditor, the typical employee

13  does not have other sources of income and, thus, cannot diversify the risk of the

14  employer's default.  Therefore, this Court has authority to allow the Debtors to pay certain

15  pre petition claims.

16      In the within case, as more particularly set forth in the Gantes Declaration, ample

17  cause exists justifying payment of the pre-petition period wages.  Specifically, as

18  evidenced by the Gantes Declaration, the maximization of the value of Debtors is

19  contingent upon the continued operation of Debtors' business.  Since the loss of any

20  employee at this critical juncture could materially damage Debtors' business operations,

21  and consequently the value of their overall business enterprise, compelling grounds exist

22  for the entry of an order authorizing Debtors to pay and/or honor the pre-petition employee

23  wages and compensation in the amounts established by the Gantes Declaration.

24  Attached to the Gantes Declaration as Exhibit "3" is a list of the Debtors' employees, and

25  the estimated monthly wages owed to each employee.

26      Consequently, it is critical that Debtors continue, in the ordinary course, those

27  personnel policies that were in effect prior to the Petition Date.  If the checks issued by a

28  payroll service such as ADP in payment of any of the compensation or other employee

EMERGENCY MOTION FOR ORDER
AUTHORIZING PAYMENT

274976.1

1  obligations are dishonored, or if such obligations are not timely paid post-petition, the

2  employees may suffer extreme personal hardship and may be unable to pay their daily

3  living expenses.  A loss of employee morale and goodwill at this crucial juncture would

4  undermine Debtors' stability, and undoubtedly would have a negative effect on Debtors,

5  their customers, the value of their assets and business, and their ability to achieve their

6  objectives in chapter 11.  As noted by the court in In re Equalnet Communications Corp.,

7  258 B.R. 368 (Bankr. S.D. Tex. 2000), "the need to pay [pre-petition employee wage

8  claims] in an ordinary course of business time frame is simple common sense.

9  Employees are more likely to stay in place and to refrain from actions which could be

10  detrimental to the case and/or the estate if their pay and benefits remain intact and

11  uninterrupted."  Id. at 370.

12        Nothing in this Motion nor any payments made by Debtors pursuant to this Motion,

13  shall be deemed an assumption or rejection of any employee benefit plan, employment

14  agreement, other program or contract, or otherwise affect Debtors' rights under section

15  365 the Bankruptcy Code to assume or reject any executory contract between the Debtors

16  and any employee or any payroll service.

17        Therefore, Debtors' believe that, unless the Court allows the payments requested

18  herein to their employees, the disruption to Debtors' employees and business practices

19  would substantially jeopardize Debtors' ability to reorganize their affairs.

20  **B.    All of the Cash Payments in Question Represent Payment of Priority**

21          **Claims**

22        All of the payments in question constitute priority claims pursuant to Sections

23  507(a)(4) and (a)(5) of the Bankruptcy Code, and are therefore more likely to be paid in

24  any event.  Debtors are unable to determine whether all vacation, severance and sick

25  leave pay was earned by employees within 180 days of the Petition Date or whether

26  contributions to employee benefit plans arise from services rendered within 180 days of

27  the Petition Date.  However, none of the payroll checks will exceed this limit.

28

EMERGENCY MOTION FOR ORDER
AUTHORIZING PAYMENT

274976.1

1    Since all priority payments must be made eventually before general unsecured
2    claims can be paid, the Courts often permit the payment of pre-petition wages so that the
3    debtor-in-possession may maintain an effective workforce, especially where the amount of
4    the payment is relatively small and where it appears that the wages being paid would
5    ultimately qualify as priority claims.  In re Quality Interiors, Inc., supra, at 396, citing 11
6    U.S.C. §507.  Debtors believe that all of the subject pre-petition wages, as well as claims
7    for vacation and sick leave benefits and other related benefits, constitute priority claims
8    pursuant to the provisions of Sections 507(a)(4) and (a)(5), which will be paid by Debtors'
9    estates in any event.  Consequently, there is ample authority and legal justification for
10   authorizing the Debtors to honor their wage and benefit commitments to current
11   employees to the extent that they constitute pre-petition obligations, as they are relatively
12   small amounts and likely within priority limits in any event.

13   **V.    NOTICE OF THE MOTION IS ADEQUATE**

14    Notice of this Motion will be provided, by telecopy, overnight courier or
15   hand-delivery, to the following parties-in-interest: (a) the Office of the United States
16   Trustee, (b) any secured creditors, (c) the Internal Revenue Service, (d) the twenty
17   (20) largest unsecured creditors of the Debtors (as identified in the lists filed pursuant to
18   Bankruptcy Rule 1007(d)), and (d) all parties who have filed notices of appearances in
19   these cases.  In light of the limited nature of the relief requested herein, Debtors would
20   submit that no further notice of the Motion should be required.  Under the circumstances
21   of this case this notice is fair and reasonable.

22   ///
23   ///
24   ///
25
26
27
28

8

EMERGENCY MOTION FOR ORDER
AUTHORIZING PAYMENT

274976.1

1   **VI.**    **CONCLUSION**

2        Based upon the foregoing, Debtors would respectfully request that this Court grant

3 the relief herein requested.

4 Dated: November _25_, 2008        WEILAND, GOLDEN,
                                 SMILEY, WANG EKVALL & STROK, LLP

5

6                             By:

7                                 REEM J. BELLO
                                Proposed Insolvency Counsel for

8                                 RSM BFS Partners, a California limited
                                partnership, Debtor and

9                                 Debtor-in-Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                   EMERGENCY MOTION FOR ORDER
                                                        AUTHORIZING PAYMENT

274976.1