**WEILAND, GOLDEN,
SMILEY, WANG EKVALL & STROK, LLP**
Evan D. Smiley, State Bar No. 161812
Reem J. Bello, State Bar No. 198840
Kyra E. Andrassy, State Bar No. 207959
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Telephone: 714-966-1000
Facsimile: 714-966-1002

Proposed Insolvency Counsel for RSM BFS
Partners, a California limited partnership,
Debtor and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>RSM BFS Partners, a California limited partnership,<br><br>    Debtor and<br>    Debtor-in-Possession.<br><br>____ Affects BRECKENRIDGE FOOD SYSTEMS, INC. Only<br>____ Affects RIVER KING, L.P. Only<br>____ Affects RIVER KING, LLC Only<br>____ Affects RSM BFS PARTNERS Only<br>_X_ Affects All Debtors. | Case No. 8:08-bk-17771 TA<br><br>Chapter 11 Case<br><br>(Jointly Administered with Case Nos. 8:08-bk-17773 TA, 8:08-bk-17774 TA and 8:08-bk-17777 TA)<br><br>**DEBTORS' EMERGENCY MOTION FOR ORDER (A) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING OR DISCONTINUING SERVICE, (B) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (C) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT UNDER SECTION 366 OF THE BANKRUPTCY CODE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declaration of John D. Gantes Filed Concurrently Herewith] |

TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY

JUDGE, AND PARTIES-IN-INTEREST:

   RSM BFS Partners, a California limited partnership ("RSM"), Breckenridge Food

Systems, Inc., a California corporation ("Breckenridge"), River King, L.P., a California

limited partnership ("River King, L.P.") and River King, LLC, a California limited liability

company ("River King, LLC"), the jointly administered debtors and debtors-in-possession in the above Chapter 11 proceedings (collectively, the "Debtors"), hereby move the Court, on a emergency basis, for an order granting the following relief:

(A) Prohibiting utilities from altering, refusing or discontinuing service;

(B) Deeming utilities adequately assured of future performance; and

(C) Establishing procedures for determining adequate assurance of future payment (the "Motion").

Debtors, who are affiliated with approximately 50 entities owning and operating approximately 110 restaurants throughout California, Washington, and Oregon, and 60 entities owning and operating various real properties from which many of the restaurants lease space, use gas, water, electric, telecommunications and other services provided by various utility companies. The continued and uninterrupted utility service and the granting of the other relief requested herein are necessary to ensure the continued efficient operation of Debtors' business. Any interruption in utility service would disrupt Debtors' operations and impair Debtors' ability to reorganize their financial affairs.

This Motion is made and based on the representations and allegations set forth above, on the appended Memorandum of Points and Authorities and the Declaration of John D. Gantes ("Gantes Declaration") filed concurrently herewith, and on such other evidence as may be presented to the Court prior to or at the hearing on this Motion.

Dated: November 25, 2008

WEILAND, GOLDEN,
SMILEY, WANG EKVALL & STROK, LLP

By: _____
REEM J. BELLO
Proposed Insolvency Counsel for
RSM BFS Partners, a California limited
partnership, Debtor and Debtor-in-
Possession

274973.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY OF MOTION AND NEED FOR EMERGENCY RELIEF

In the ordinary course of business, Debtors use gas, water, electric, telecommunications and other services provided by various utility companies (collectively, the "Utility Providers"). The continued and uninterrupted utility service is essential to Debtors' ability to sustain their operations during their Chapter 11 cases. Any interruption of utility service would severely disrupt Debtors' business operations. Prior to the Petition Date, Debtors generally paid Utility Providers' bills consistently and on a regular basis. A non-exhaustive list of Utility Providers that provide utility services to Debtors as of the Petition Date and the estimate is attached as Exhibit "4" to the Gantes Declaration. A list of each of Debtors' estimated average monthly payments per restaurant to all of their Utility Providers is set forth in the table below.

| | |
|---|---|
| RSM BFS Partners | $4,100 |
| Breckenridge Food Systems, Inc. | $34,500 |
| River King, L.P. | $11,000 |

To continue day-to-day operations in the most cost-effective manner, Debtors must ensure that there is no interruption of utility services. Since Debtors cannot continue their business operations without utility services, it is critical that Debtors obtain emergency authorization for the relief requested herein and further relief as is just and appropriate under the circumstances in this case.

## II. STATEMENT OF FACTS

### A. Description of Debtors

Debtors are affiliated with approximately 50 entities owning and operating approximately 110 restaurants throughout California, Washington, and Oregon, and 60 entities owning and operating various real properties from which many of the restaurants lease space. Approximately thirteen of these affiliated cases have already been filed with the Court.

274973.1

Debtors operate Burger King franchises in California and together have approximately 14 locations. Specifically, they operate the following locations:

    a.    Breckenridge Food Systems, Inc., operates locations in Irvine, Santa Ana, Aliso Viejo, Ladera Ranch, Orange, and two locations in Newport Beach.

    b.    River King, L.P., operates six Burger Kings in the Inland Empire and River King, LLC, is its general partner; and

    c.    RSM BFS Partners, a California limited partnership, operates a location in Rancho Santa Margarita. Attached as Exhibit "1" to the Gantes Declaration are corporate organization charts that illustrate graphically the ownership relationship of Debtors.

**B.**    <u>**Events Precipitating Chapter 11 Filing**</u>

Debtors have experienced a decline in their revenues because of the current economic climate and have fallen behind on various debts, including royalty payments to Burger King Corporation, which has issued notices of default to various of the Debtors. To prevent termination of the franchise agreements, Debtors require some breathing room from pre-petition creditors while they reorganize, close unprofitable stores as necessary, and rebuild themselves into viable businesses through the reorganization process.

**C.**    <u>**Proposed Relief Regarding Debtors' Utility Providers**</u>

In the ordinary course of business, Debtors use gas, water, electric, telecommunications and other services provided by Utility Providers. The continued and uninterrupted utility service is essential to Debtors' ability to sustain their operations during their chapter 11 cases. Any interruption of utility service would severely disrupt Debtors' business operations. Prior to the Petition Date, Debtors generally paid Utility Providers' bills consistently and on a regular basis. A non-exhaustive list of the Utility Providers that provide utility services to Debtors as of the Petition Date is attached as Exhibit "4" to the Gantes Declaration.

By this Motion, pursuant to sections 105(a) and 366 of the Bankruptcy Code, Debtors seek entry of an emergency order by this Court: (a) prohibiting the Utility Providers from altering, refusing or discontinuing service; (b) deeming Utility Providers

2    EMERGENCY MOTION RE UTILITIES

274973.1

1  adequately assured of future performance; and (c) establishing procedures for
2  determining adequate assurance of future payment.
3      To provide adequate assurance of payment for future services to their Utility
4  Providers, Debtors propose to establish reasonable procedures (the "Procedures") by
5  which Utility Providers may request adequate assurance of future payment. Such
6  Procedures would provide that:
7      •    absent further order of this Court and except as otherwise provided herein,
8  Utility Providers may not alter, refuse or discontinue service to, or discriminate against,
9  Debtors on account of the commencement of these chapter 11 cases or any unpaid
10 pre-petition charges, or request payment of a deposit or receipt of other security in
11 connection with any unpaid pre-petition charges;
12     •    Debtors will serve the Motion and an order granting the Motion on an interim
13 basis, if granted by the Court, via first-class mail, within three (3) business days after the
14 date that the order is entered by the Court, on all Utility Providers identified on Exhibit "4"
15 attached to the Gantes Declaration; provided that for any Utility Provider that may have
16 been omitted from Exhibit "4" to the Gantes Declaration, Debtors shall have the right to
17 supplement such list of Utility Providers and shall promptly provide notice of the order
18 upon learning of such Utility Provider;
19     •    a Utility Provider may request assurance of payment within thirty (30) days
20 after the Petition Date (an "Assurance Request") by submitting an Assurance Request to
21 (i) Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP, 650 Town Center Drive, Suite
22 950, Costa Mesa, California 92626, Attn: Reem J. Bello; (ii) RSM BFS, 10 Faraday,
23 Irvine, California 92618, Attn: John D. Gantes; (iii) River King, L.P., 10 Faraday, Irvine,
24 California 92618, Attn: John D. Gantes; (iv) Breckenridge, 10 Faraday, Irvine, California
25 92618, Attn: John D. Gantes; and (v) River King, LLC., 10 Faraday, Irvine, California
26 92618, Attn. John D. Gantes.
27     •    any Assurance Request must (i) be made in writing and (ii) include a
28 summary of Debtors' payment history relevant to the affected account(s);

3    EMERGENCY MOTION RE UTILITIES

274973.1

1 • if a Utility Provider makes a timely Assurance Request that Debtors believe
2 is reasonable, then Debtors shall be authorized in their sole discretion to comply with such
3 request without further order of the Court;

4 • if Debtors believe the Assurance Request is unreasonable, Debtors will
5 schedule a hearing to determine if assurance to such Utility Provider is necessary (the
6 "Determination Hearing");

7 • pending resolution of that issue at any such Determination Hearing, any
8 Utility Provider making an Assurance Request shall be prohibited from altering, refusing or
9 discontinuing service to Debtors; and

10 • a Utility Provider shall be deemed to have adequate assurance of payment
11 unless and until a future order of this Court is entered requiring further adequate
12 assurance of payment.

13 Although Debtors believe that the list of Utility Providers attached as Exhibit "4" to
14 the Gantes Declaration is a complete list, Debtors reserve the right, without further order
15 of the Court, to supplement the list if any Utility Provider has been inadvertently omitted. If
16 Debtors supplement the list subsequent to the filing of this Motion, Debtors will promptly
17 serve a copy of this Motion, and the signed Order, on any Utility Provider that is added to
18 the list by such a supplement. Concurrently with such service, Debtors will file with the
19 Court a supplement to Exhibit "4" to the Gantes Declaration adding the name of the Utility
20 Provider so served. Such an added Utility Provider shall have thirty (30) days from the
21 date of service of this Motion and the order to make an Assurance Request. If such an
22 Assurance Request is made, Debtors shall abide by the procedures set forth above, as
23 applicable. Pending resolution of any Determination Hearing relating to an Assurance
24 Request, Debtors may seek an order prohibiting any such Utility Provider from altering,
25 refusing or discontinuing utility services to Debtors.

26 **III.  BASIS FOR RELIEF UNDER SECTION 366 OF THE BANKRUPTCY CODE**

27 Section 366(a) of the Bankruptcy Code protects a debtor against the immediate
28 termination of utility services after it files for bankruptcy. Pursuant to this section, a utility

may not, during the first twenty (20) days of the case, alter, refuse, or discontinue services to a debtor in a chapter 11 case solely because of unpaid pre-petition amounts. However, the utility may subsequently do so unless the debtor (as Debtors are doing pursuant to this Motion) furnishes "adequate assurance" of payment, in the form of a deposit or otherwise, for post-petition services in a form "satisfactory" to the utility within 30 days of the Petition Date.

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, courts, commentators, and legislative history had all confirmed that section 366 does not require, in every case, that the debtor provide a deposit or other security to its utilities as adequate assurance of payment. In <u>Virginia Electric & Power Co. v. Caldor, Inc.</u>, 117 F.3d 646, 648-49 (2d Cir. 1997), the United States Court of Appeals for the Second Circuit affirmed the bankruptcy court's ruling that the debtor's pre-petition payment history, its post-petition liquidity, and the administrative expenses afforded post-petition invoices constituted adequate assurance of future performance. <u>See also</u>, <u>In re Pacific Gas & Elec. Co.</u>, 271 B.R. 626, 644-45 (N.D. Cal. 2002) (upholding the bankruptcy court's finding that the debtor's likelihood of performance and availability of resources provided adequate assurance); <u>Shirley v. Philadelphia Elec. Co. (In re Shirley)</u>, 25 B.R. 247, 249 (Bankr. E.D. Pa. 1982) ("section 366(b) ... does not permit a utility to request adequate assurance of payment for continued services unless there has been a default by the debtor on a pre-petition debt owed for services rendered").

Under the recently enacted section 366(c) of the Bankruptcy Code, however, in a chapter 11 case, a utility company may alter, refuse, or discontinue utility service if within 30 days after the commencement of the chapter 11 case, the utility company does not receive adequate assurance in a form that is "satisfactory" to the utility company, subject to the Court's ability to modify the amount of adequate assurance. Further, under section 366(c), in making a determination of whether an assurance of payment is adequate, the Court may not consider (i) the absence of security before the petition date, (ii) the debtor's

history of timely payment or (iii) the availability of an administrative expense priority to the utility company.

While the form of adequate assurance of payment may be limited under new subsection 366(c) to the types of security enumerated in subsection 366(c)(1)(A), the amount of the deposit or other form of security remains fully within the reasonable discretion of the Court. It has been well established that the requirement that a utility receive adequate assurance of payment does not require a guarantee of payment. Instead, the protection granted to a utility is intended to avoid exposing the utility to an unreasonable risk of nonpayment. In Adelphia Business Solutions, Inc., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002), the Bankruptcy Court for the Southern District of New York stated that "[i]n determining adequate assurance, a bankruptcy court is not required to give a utility company the equivalent of a guaranty of payment, but must only determine that the utility is not subject to an unreasonable risk of nonpayment for post-petition services." The essence of the Court's inquiry is an examination of the totality of the circumstances in making an informed judgment as to whether utilities will be subject to an unreasonable risk of nonpayment. Id. at 82-83; See also, In re Magnesium Corp. of America, 278 B.R. 698, 714 (Bankr. S.D.N.Y. 2002) ("In deciding what constitutes adequate assurance in a given case, a bankruptcy court must focus upon the need of the utility for assurance, and to require that the debtor supply no more that than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.").

Adequate assurance of payment does not require an absolute guarantee of payment; instead, what is required is that the utility be protected from an unreasonable risk of future loss or nonpayment. The Bankruptcy Court is granted reasonable discretion in determining what constitutes adequate assurance of payment for future service. The terms of adequate assurance of payment should not be such a financial burden upon the debtor as to thwart or deter rehabilitation potential, and thereby be an unreasonable demand. Thus, when the adequate assurance issue arises in the context of a reorganization proceeding, the Bankruptcy Court must concern itself with the success of

274973.1

the rehabilitative process. The court may also consider the probability of payment through the bankruptcy proceedings. See 9B Am. Jur. 2d Bankruptcy § 1788 (2005).

Here, Debtors propose to protect the Utility Providers further by establishing the Procedures provided for herein, whereby any Utility Provider can request adequate assurance in the event that it believes there are facts and circumstances with respect to its providing post-petition services to Debtors that would merit greater protection.

As set forth above, Debtors cannot continue to perform without continued utility services. If any of the Utility Providers alter, refuse or discontinue service, even for a brief period, Debtors' business operations would be severely disrupted. Such disruption could have a devastating impact on Debtors' going concern value and ability to reorganize. In contrast, Utility Providers will not be prejudiced by the continuation of their services and will be paid all post-petition utility charges. It is therefore critical that utility services continue uninterrupted.

This Court also has the authority to grant the relief requested herein pursuant to section 105(a) of the Bankruptcy Code which provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The purpose of section 105(a) is "to assure the bankruptcy court[']s power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier On Bankruptcy ¶ 105.01, at 105-5 to 105-6 (15th rev. ed. 2001). Because the proposed Procedures protect Debtors and Utility Providers, they carry out section 366 in a manner fully consistent therewith and are an appropriate exercise of this Court's authority under section 105(a) of the Bankruptcy Code.

IV. **THE RELIEF REQUESTED HEREBY IS JUSTIFIED ON AN EMERGENCY BASIS**

Rule 9006(c)(1) of the Federal Rules of Bankruptcy Procedure provides that, for "cause shown," a bankruptcy court may reduce the time periods provided for service in the Bankruptcy Rules, except as to the time periods provided in Rule 9006(c)(2). Since the time period at issue in this Motion is not one of those listed in Rule 9006(c)(2), this Court has the power to grant the relief prayed for herein on an "emergency" basis. As set forth

7    EMERGENCY MOTION RE UTILITIES

274973.1

Case 8:08-bk-17771-TA    Doc 7    Filed 11/25/08    Entered 11/25/08 16:30:04    Desc
Main Document    Page 10 of 10

1  in detail in the Gantes Declaration, cause exists for authorizing the relief requested herein
2  on an emergency basis.

3  **V.    THE NOTICE GIVEN OF THIS MOTION IS APPROPRIATE UNDER THE FACTS**
4  **AND CIRCUMSTANCES OF THIS CASE**

5  Debtors have served a copy of this Motion on all secured creditors, the unsecured
6  creditors holding the 20 largest claims against the Debtors and the Office of the United
7  States Trustee. Debtors respectfully submit that such notice is appropriate and comports
8  with the requirements of the Federal Rules of Bankruptcy Procedure ("FRBP") and the
9  Local Bankruptcy Rules ("LBR"). See, Rule 2002 of the FRBP; Rule 9006(c) of the FRBP;
10 Rule 9075 1(a) of the LBR.

11 **VI.   CONCLUSION**

12 Based upon the foregoing, Debtors respectfully request that the Court entered its
13 order granting the relief requested herein, and granting to Debtors such other and further
14 relief as is just and appropriate under the circumstances of this case.

15 Dated: November 25, 2008           WEILAND, GOLDEN,
                                      SMILEY, WANG EKVALL & STROK, LLP
16
17                                    By:  /s/ Reem Bello
18                                    REEM J. BELLO
                                      Proposed Insolvency Counsel for
19                                    RSM BFS Partners, a California limited
                                      partnership, Debtor and Debtor-in-
20                                    Possession

8                                              EMERGENCY MOTION RE UTILITIES

274973.1